UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DARCY D. BELL,

                Plaintiff,

v.                                               Case No. 18-cv-1150-pp

DEREK KOZAK, JEFFREY PAMENTER,
TODD A. CAMPBELL, NICOLE L. FUMELLE,
HANNAH N. SCHUCHART, CALEB J. SAUNDERS,
KENDALL KELLEY, and JOHN LUETSCHER,

                Defendants.

---

## ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)

---

Plaintiff Darcy D. Bell, is a state prisoner who is representing himself; he filed a complaint alleging that his civil rights were violated in December 2017 in Brown County, Wisconsin. Dkt. No. 1. This case is assigned to Magistrate Judge David E. Jones. The defendants have not yet had the opportunity to decide whether to consent to Judge Jones hearing and deciding the case because, until now, the court has not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the clerk's office has referred the case to the district court to screen the complaint and decide whether it should be served on any of the defendants. The court will explain what claims the plaintiff has stated against which defendants, then return the case to Judge Jones for further proceedings.

## I. Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the opportunity to proceed with his case without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 27, 2018, Judge Jones ordered the plaintiff to pay an initial partial filing fee of $9.66. Dkt. No. 5. The court received that fee on August 1, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Plaintiff's Complaint

### A. *Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. *The Plaintiff's Allegations*

The plaintiff alleges that Brown County Sheriff's Deputy Derek Kozak wrongfully arrested him. Dkt. No. 1 at 3. The plaintiff explains that, on December 14, 2017, his brother was in a car accident. Id. The following day, he and his brother went to the car to get his brother's things. Id. The plaintiff alleges that while his brother was at the car, he walked about a mile away to a gas station. Id. Upon returning to the car, he noticed an officer (whom he later

3

identified as Kozak) talking to his brother. Id. at 4. The plaintiff asserts that he walked toward the car to see what was going on. Id.

The plaintiff explains that, as he got close to the car, Kozak handed his brother his ID and started to leave. Id. The plaintiff alleges that when he approached his brother, however, Kozak got out of his car and began to harass the plaintiff. Id. The plaintiff states that he told Kozak he did not want to speak to him, at which time Kozak allegedly became combative and began yelling, threatening and demanding answers from the plaintiff. Id. The plaintiff states that he stood quietly and then asked Kozak if he was under arrest (stating that if he was, he wanted a lawyer). Id. Kozak allegedly said no, so the plaintiff states that he turned to leave because he knew that Kozak was prejudiced. Id.

The plaintiff explains that he walked to a secluded area behind a garage so he could use the restroom. Id. About five minutes later, he saw Kozak yelling with his gun pointed at him. Id. According to the plaintiff, Kozak stated, "Don't fucking move, I'll blow you away, pull [sic] your hands w[h]ere I can see them now or I'll shoot." Id. at 4-5.

The plaintiff states that he did as he was told and laid down in about six inches of snow. Id. at 5. The plaintiff alleges that he then was hit in the back of his head by Kozak's service weapon, which knocked him out cold. Id. He states that when he woke up, he "was laying face down in the snow with blood pouring out of [his] head with the right side of [his] face frozen from being face down in the snow so long, it was then that [he] discovered that the right side of his upper lip was hurting and that one of [his] teeth was knocked out." Id.

4

The plaintiff asserts that Kozak escorted him to his police car, where back-up had just arrived. Id. The plaintiff states that he was escorted to where his brother's car was; his brother already had left in his other vehicle. Id. The plaintiff states that defendant officers Jeffrey Pamenter and Todd Campbell, along with other officers, approached Kozak's car. Id. According to the plaintiff, Pamenter said to him, "What's your fuckin name boy, do you have a hearing problem or something boy?" Id. The plaintiff states that he responded by asking for a lawyer and medical assistance. Id. at 5-6. Pamenter allegedly told the plaintiff that he did not need medical assistance and instructed him to hold out his finger so he could "Fast ID" his prints. Id. at 5.

The plaintiff asserts that he again asked for a lawyer and medical assistance. Id. Pamenter allegedly told Campbell to try to force the plaintiff's hand onto the "Fast ID" reader. Id. According to the plaintiff, after he once again refused to comply (asking again for a lawyer and for medical assistance), Pamenter and Kozak slammed his head into Kozak's squad car window. Id. Pamenter then instructed the other officers to "transport this dumb asshole to the Brown County Jail and have them Fast ID him there." Id.

According to the plaintiff, Kozak and Campbell transported him to the jail. Id. On the way there, Kozak allegedly pulled the car over and accused the plaintiff of trying to pick his handcuffs. Id. Kozak and Campbell allegedly jumped into the backseat to check the handcuffs. Id. The plaintiff denied picking the handcuffs and explained that it was impossible to do so with padded gloves on both hands. Id.

5

Upon arrival at the jail, the plaintiff states that he again asked for medical assistance. Id. According to the plaintiff, Kozak and Campbell told the deputies at the jail that the plaintiff was fine and did not need medical attention. Id. The plaintiff asserts that defendant Nicole Fumelle denied the plaintiff medical assistance and locked him in a cell for hours. Id. at 7.

The plaintiff explains that he refused to be booked into the jail until he got some medical attention for the injuries he allegedly suffered during his arrest. Id. The plaintiff states that he was in "unbearable pain, . . . cough[]ing up blood, having headac[he]s, passing out and choking on blood that ran down [his] throat from [his] bleeding gums from having [his] teeth kno[ck]ed out in the upper right corn[e]r of [his] mouth." Id. The plaintiff states that he was afraid he could die or that he had internal bleeding in his head, so he contacted Corporal Engles (who is not a defendant). Id.

Engles allegedly told him that there wasn't anything he could do because the plaintiff had not been booked into the jail. Id. According to the plaintiff, he was afraid he would die if he was not booked into the jail. Id. The plaintiff asserts that Engles told him that he was trying to help him. Id. Engles allegedly explained to the plaintiff that he had been charged with obstructing an officer and his bond was only $300. Id. The plaintiff asserts that Engles also told him that if he told Engles his name, then the plaintiff would be entitled to a phone call and he could then post bail and get medical attention. Id. at 7-8. Engles allegedly told the plaintiff that he didn't "know what's wrong with most of you black guy[s], but [he] see[s] you guy[s] don't have a[] brain or use your head

6

very of[ten]." Id. at 8. Engles allegedly denied that he was being racist and told the plaintiff that it "breaks [his] heart" that most of the "Blacks" he ran across "can't think straight or act like hoodlums . . . instead of going about it the right way." Id. The plaintiff states that he then told Engles his name, was booked into the jail, received a phone call and posted bail. Id.

The following day, Fumelle allegedly learned that the plaintiff had posted bail and contacted Kozak "to leak further information about [him]" that she had learned from the F.B.I. criminal information service division. Id. According to the plaintiff, Fumelle received this "confidential" information in response to submitting the plaintiff's prints. Id. The plaintiff does not specify what "personal information" Fumelle allegedly leaked to Kozak. Id. at 9. According to the plaintiff, Kozak continued to look for information about him so he could rack up more charges against the plaintiff. Id. Kozak learned that the plaintiff was on parole in Illinois and contacted the Illinois Department of Corrections, "spreading more fa[]lse hood on plaintiff (AKA) slandering." Id.

The plaintiff asserts that Kozak contacting the Illinois Department of Corrections led to a false warrant being issued for his arrest. Id. The plaintiff alleges that the warrant was ineffective and defective because it was not signed by a magistrate judge and never gave authority to anyone in Wisconsin to arrest or apprehend the plaintiff. Id. The plaintiff argues that Wisconsin did not have jurisdiction over "said matters" because Illinois and Wisconsin have different laws. Id. The plaintiff further argues that the warrant was not actually a warrant but was only an "Illinois Department of Corrections receipt for

7

warrant showings: commitment type: release, meaning to release said plaintiff, the state attorneys who filed a[] fugitive complaint on said plaintiff (John Luetscher -N- Caleb Saunders) still refused to release the plaintiff trying to get an Govennor [sic] warrant to extradi[te] the plaintiff to Illinois." Id.

The plaintiff explains that on May 29, 2018, he filed "a motion to dismiss the extradition in front of Judge Kendall Kelley, setting forth all of the said matter forthwith in the said complaint." Id. at 9-10. The plaintiff states that Judge Kelley disregarded his motion and legal arguments. Id. at 10. The plaintiff alleges that he did not read his motion or set it for a hearing. Id. Over the plaintiff's objections, Judge Kelley gave the state attorneys until July 30, 2018 "to try to obtain an governor warrant against the plaintiff." Id.

The plaintiff states that, on June 25, 2018, he filed a motion to subpoena police-car and body-cam video from the Brown County Sheriff's Police Department from the day of his arrest. Id. The plaintiff received notice that the "squad car dash cam came up missing."[1] Id. The plaintiff argues that the defendants are tampering with evidence. Id. He has sued Kozak, Pamenter, Campbell and Fumelle. Id. at 1. He also has sued Hannah N. Schuchart, Caleb Saunders and John Luetscher, id.; the State Bar of Wisconsin web site indicates that all three of these defendants are assistant district attorneys in

---

[1] The plaintiff continues that he "was told that there was no camera . . . ,'" however, the conclusion of this sentence, which runs onto the next line of the page, is cut off and the court can't read it. For the reasons explained in the court's analysis, this missing line is not material to the court's screening decision.

8

the Brown County District Attorney's Office. www.wisbar.org. Finally, he has sued Judge Kendall M. Kelley of the Brown County Circuit Court.

C. *The Court's Analysis*

The plaintiff dated his complaint July 1, 2018. Dkt. No. 1 at 13. He listed his inmate number as 930000019136, and his address as 3030 Curry Lane, Green Bay, Wisconsin, id.; this is the address for the Brown County Jail.

The court checked the Wisconsin Circuit Court Access Program, and found that there was a misdemeanor complaint filed on January 3, 2018 in State v. Bell, 2018CM000025 (Brown County), charging the plaintiff with two counts of resisting/obstructing. Presumably this is the case to which the plaintiff referred; the presiding judge was Judge Kendall M. Kelley, and the docket shows that on May 29, 2018, the plaintiff filed a motion. The docket indicates, however, that the case is closed; it shows a "dispositional order/judgment" on August 24, 2018, but does not say what the disposition was. The docket also shows that the court received correspondence from the plaintiff on September 4, 2018; it also lists a change of address notification to 3030 Curry Lane, Brown County Jail. https://wcca/wicourts.gov, last visited September 6, 2018.

WCCAP also shows that there was a felony complaint filed against the defendant on May 10, 2018 in State v. Bell, 2018CF000690 (Brown County). Judge Kelley also was the presiding judge in that case. The "charge" was a violation of Wis. Stat. §976.03(13), arrest prior to requisition; this likely related to the plaintiff's allegation that the defendants caused a "false" Illinois arrest

9

warrant to issue. The docket indicates that on August 24, 2018, the Brown County court denied the plaintiff's petition for *habeas corpus*, and ordered him returned to Illinois "when able."

The court checked the Brown County Inmate Lookup Tool, which indicates that the plaintiff was in the Brown County Jail until September 4, 2018. https://www.lookup.inmate.oms.jail.co.brown.wi.us:8081/IML. The court then checked the Illinois Department of Corrections inmate locator web site; it lists Darcy D. Bell as an inmate at Stateville Correctional Center in Joliet, with an admission date of September 4, 2018. https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx.

Though it appears the plaintiff is no longer a *Wisconsin* prisoner, 28 U.S.C. §1391 states that venue for a civil lawsuit is proper in the judicial district where the defendants reside or in which a substantial part of the events giving rise to the claim occurred. The defendants allegedly reside in the Eastern District of Wisconsin, and the events giving rise to the complaint occurred in this district.

1.  Excessive Force Claim: Kozak, Pamenter and Campbell

The plaintiff alleges that some of the defendant officers used excessive force during his arrest, those allegations arise under the Fourth Amendment. See Lopez v. City of Chi., 464 F.3d 711, 719 (7th Cir. 2006). "[I]n a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff . . . as

well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." Sanchez v. City of Chicago, 700 F.3d 919, 925-26 (7th Cir. 2012).

The court will allow the plaintiff to proceed on Fourth Amendment excessive force claims against Kozak based on his allegations that Kozak hit the plaintiff in the head with his gun and slammed the plaintiff's head into his squad car window. The court will allow the plaintiff to proceed on an excessive force claim against Pamenter based on his allegations that Pamenter also slammed the plaintiff's head into Kozak's squad car window. The court will allow the plaintiff to proceed against Campbell based on his allegations that Campbell was standing nearby when Pamenter and Kozak slammed the plaintiff's head into the squad car window. Although it is not clear whether Campbell had a realistic opportunity to intervene in the alleged use of force, the court will construe the plaintiff's allegations broadly (as it must at this stage) and allow him to proceed.

2. Deliberate Indifference Claim: Kozak, Pamenter, Campbell and Fumelle

Because the events the plaintiff describes occurred after he was arrested but before he had been convicted of any offense, any claim against officers based on alleged deliberate indifference to the plaintiff's serious medical needs would arise under the Fourteenth Amendment. See Smith v. Knox Cty. Jail, 666 F.3d 1037, 1039-40 (7th Cir. 2012). That amendment "affords pretrial detainees the same protection against deliberate indifference as the Eighth Amendment guarantees to the convicted." Id. at 1039 (citations omitted). The

11

Eighth Amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Petties v. Carter, 836 F.3d 722, 727 (7th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). To show deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical condition, and that each individual defendant was deliberately indifferent to that condition. Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

The plaintiff alleges that he was bleeding from his head, had a tooth knocked out, was coughing up blood and was in a lot of pain. The court assumes for the purposes of screening that these are objectively serious medical conditions. He asserts that he asked Kozak, Pamenter, Campbell and Fumelle for medical attention, but they each ignored or dismissed his requests. These allegations are sufficient for the plaintiff to proceed on deliberate indifference to serious medical needs claims against these defendants.

### 3. False Arrest: Kozak

The court will allow the plaintiff to proceed on a false arrest claim under the Fourth Amendment against Kozak based on his allegations that Kozak arrested him five minutes after the plaintiff had walked away to a secluded area to use the restroom. The plaintiff's allegations, which the court construes broadly at this stage, support a reasonable inference that Kozak arrested the plaintiff without justification. See Neita v. City of Chi., 830 F.3d 494, 497 (7th

Cir. 2016) ("To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest.").

Depending on what actually happened in the cases before Judge Kendall, it could be that the plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), which holds that "a plaintiff who has been convicted of a crime cannot seek damages under § 1983 for harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid' as long as the conviction stands." Ocasio v. Turner, 19 F.Supp.3d 841, 848 (N.D. Ind. 2014) (quoting Heck, 512 U.S. at 486-87). If those cases are not actually closed, it could be that under Younger v. Harris, 401 U.S. 37 (1971), the court "must abstain from taking jurisdiction over [the plaintiff's] federal constitutional claims" because doing so would "interfere with ongoing state proceedings." Gakuba v. O'Brien, 711 F.3d 751, 753 (7th Cir. 2013). Because the court is not certain what happened in those cases, or how they relate to the claims in this case, the court will allow the plaintiff to proceed with a false arrest claim against Kozak at this stage.

### 4. Immunity: Schuchart, Saunders, Luetscher and Judge Kelley

The court will not allow the plaintiff to proceed against defendants Schuchart, Saunders or Luetscher. The plaintiff has made no specific allegations against Schuchart; he simply lists her as one of the defendants. He alleges that Saunders and Luetscher "filed a[] fugitive complaint on said plaintiff." Dkt. No. 1 at 9. The plaintiff asserts that Judge Kelley denied the

plaintiff's "motion to dismiss the extradition," id., despite the plaintiff's arguments that an Illinois warrant would be defective.

Schuchart, Saunders and Luetscher are prosecutors, and enjoy "absolute immunity for the initiation and pursuit of a criminal prosecution." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (explaining that considerations underlying the common-law rule of immunity for prosecutors support "a rule of absolute immunity for conduct of prosecutors that [is] intimately associated with the judicial phase of the criminal process") (citations and internal quotations omitted). Similarly, Judge Kelley enjoys absolute immunity regarding his decision to deny the plaintiff's motion to dismiss because he had jurisdiction over the plaintiff to decide that motion. See Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011). The court will dismiss Schuchart, Saunders, Luetscher and Kelley as defendants.

    5.    Miscellaneous Claims

The court will not allow the plaintiff to proceed on his allegations that Fumelle shared with Kozak confidential information she obtained from the F.B.I. after she sent the plaintiff's fingerprints to its crime lab. These allegations are too vague to state a claim. The plaintiff does not explain what information Fumelle allegedly shared, why it was confidential or how he was harmed because of her sharing the information.

Finally, the court will not allow the plaintiff to proceed against any of the defendants on his allegations that the dash cam video of his arrest was destroyed. The plaintiff does not say which, if any, of the named defendants

14

allegedly destroyed the video, nor does the plaintiff provide facts to suggest that any identification he would make of a responsible individual would be based on anything other than his speculation. If the plaintiff obtains information during discovery that suggests that someone intentionally destroyed the video, he may file a motion to amend his complaint to include that claim, and the court will consider it. The court cautions the plaintiff that any motion to amend his complaint must comply with Fed. R. Civ. P. 15 and Civ. Local Rule 15 (E.D. Wis.).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Hannah Schuchart, Caleb Saunders, John Luetscher and Kendall Kelley.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendants Derek Kozak, Jeffrey Pamenter, Todd Campbell and Nicole Fumelle under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give the

plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Derek Kozak, Jeffrey Pamenter, Todd Campbell and Nicole Fumelle to file a responsive pleading to the complaint.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $340.34 balance of the filing fee by collecting monthly payments from the trust account in an amount equal to 20% of the preceding month's income credited to the account and forwarding payments to the clerk of court each time the amount in the account exceeds $10, in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Stateville Correctional Center.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **RETURNS** this case to Magistrate Judge David E. Jones for further proceedings.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

        Office of the Clerk
        United States District Court
        Eastern District of Wisconsin
        362 United States Courthouse
        517 E. Wisconsin Avenue
        Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

    The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

    Dated in Milwaukee, Wisconsin, this 7th day of September, 2018.

                                  **BY THE COURT:**

                                  _____
                                  **HON. PAMELA PEPPER**
                                  **United States District Judge**